IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD ROBERTS, LLC, d/b/a ERlifescience,<br><br>                                Plaintiffs,<br><br>v.<br><br>INDIANA ECONOMIC DEVELOPMENT CORP.,<br><br>                                Defendant. | Case No. 1:22-cv-00985-PKC-RLM |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Indiana Economic Development Corp. ("IEDC"), by counsel, under Fed. R. Civ. P. 56, respectfully submits its reply in support of summary judgment.

**I.    EDC is immune from liability under the Eleventh Amendment.**

    **A.  IEDC was expressly acting as the State of Indiana's purchasing agent.**

IEDC has Eleventh Amendment immunity because it was acting as the State's agent.

In its Response (p.15), ER cites *Grajales v. Puerto Rico Ports Authority*, 831 F.3d 11 (1st Cir. 2016), which recognized that "an entity that does not otherwise qualify as an arm of the state may nevertheless be immune in a particular case *if the entity was acting as an agent of the State*." *Id.* at p.19 n.7 (internal quotation omitted) (emphasis added). *Grajales* cited *Shands Teaching Hosiptal & Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000), for this point.

In its Response, ER ignores *Shands*, despite IEDC analyzing it. (Brief pp.4-7). In *Shands*, the Eleventh Circuit held that "private corporations that are neither controlled nor funded by the state . . . are protected by governmental immunity when they are clearly acting as agents of the state." 208 F.3d at 1311. The Second Circuit has held that a party acting as the State's agent can be immune under the Eleventh Amendment. *D'Alessandro v. City of New York*, 713 Fed. Appx. 1, *8 (2d Cir. Oct. 17, 2017). "[I]f a district attorney or assistant district attorney acts as a prosecutor,

1

she is an agent of the State, and therefore immune from suit in her official capacity." *Id.* "But if the suit centers on the administration of the district attorney's office—that is, on the 'office policy' that the district attorney sets—then the district attorney is considered a municipal policy maker, and the Eleventh Amendment does not immunize him from suit." *Id.* (internal quotation omitted).

ER responds that "IEDC is not akin to a prosecutor acting as an agent of the state." (Response p.9.) But ER ignores that its owners and counsel acknowledged that IEDC purchased masks for the State. (Brief pp.6-7.) ER admits it registered as a vendor of the State to "receive payment from the State of Indiana." (Response to UMF ¶ 21.) ER invoiced the "State of Indiana" for the masks. (*Id.* ¶ 52.) ER clearly understood that IEDC was acting an agent of the State.

Indeed, ER admits the Memorandum of Understanding ("MOU") expressly provided that IEDC was "**the State's 'purchasing agent for equipment and other resources**.'" (*Id.* ¶ 3.) But ER argues the MOU is hearsay. (Response p.6.) Not so. "[A]greements are not hearsay under Rule 801(c)," and they are admissible "as 'verbal acts' to show their existence and legal consequences." *United States v. Konstantinovskiy*, 2024 WL 3360379, *10 (E.D.N.Y. July 10, 2024). The MOU is not hearsay. It proves IEDC expressly acted as the State's agent. The Eleventh Amendment provides IEDC immunity as the State's agent.

### B. IEDC is immune under *Clissuras*.

Under the *Clissuras* factors, IEDC is immune from liability. A factor for determining whether Eleventh Amendment immunity applies is "the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity." *Clissuras v. City Univ. of New York*, 359 F.3d 79, 82 (2d Cir. 2004) (internal quotation omitted). ER contends IEDC did not "prove that the State is responsible for a judgment." (Response p.9.) This is wrong in two regards. **First**, ER does not dispute that as a disclosed principal the State is

2

responsible for any judgment in this case. *See Boesch v. Marilyn M. Jones & Associates*, 712 N.E.2d 1061, 1062 (Ind. Ct. App. 1999).

Instead, ER argues that agency is an affirmative defense, and IEDC allegedly "forfeited this defense" under New York law. (Response p.10.) But whether an entity is immune under the Eleventh Amendment is an issue "*of federal law*," not state law. *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006) (emphasis added). The Second Circuit has held that the issue can be raised for the first time on "summary judgment rather than in its answer." *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 449 (2d. Cir. 1999). IEDC answered the Complaint that ER "register[ed] as a state vendor," ER "invoiced the State," IEDC has "Eleventh Amendment" immunity, (Dkt. 31 pp.3, 7, 34), and IEDC raised the issue on summary judgment. IEDC did not waive the issue. *Richardson*, 180 F.3d at 449.

ER cites *Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001), to argue that the State would not be liable for any judgment against IEDC. (Response p.11.) But that case was an "individual capacity" claim against an employee. It did not involve a state agency acting expressly as the state's purchasing agent.

**Second**, no Indiana statute insulates the State from IEDC's debts or liabilities generally. ER ignores that in *T.W. v. New York State Bd. of L. Examiners*, 2022 WL 2819092, at *4 (E.D.N.Y. July 19, 2022), this Court found it significant that "no statutory provision insulates the state from the Board's debts." ER argues that "the State explicitly disclaims financial liability for IEDC's transactions *in several contexts*." (Response p.9, 18) (emphasis added). ER's concession that the State disclaims IEDC's liability "in several contexts" is critical and defeats ER's argument. Indiana Code § 5-28-20-11(a) provides that "[a]n obligation of the *program* for losses . . . *is not a debt of the state* but is payable solely from the *fund*." (Emphases added) "Program" means "the small and

3

minority business financial assistance program." Ind. Code § 5-28-20-7. "Fund" means the "small business development fund." Ind. Code § 5-28-20-2. The State did not generally disclaim IEDC's debts and liabilities, but only debts resulting from the "small business development fund." The Indiana Legislature knows how to disclaim IEDC's debts, and it has not done so generally for the IEDC. The "specification of some exceptions in a statute means that other matters not specified are excluded, and courts are not free to graft additional exceptions onto a statute." *P.M. v. State*, 165 N.E.3d 602, 604 (Ind. Ct. App. 2021). ER asks this Court to engraft a general disclaimer of liability for IEDC debts and obligations into Indiana law, which this Court may not do. *Id.*

Another *Clissuras* factor is "the degree of supervision exercised by the state over the defendant entity." 359 F.3d at 82 (2d Cir. 2004). The State has veto power over IEDC's authority to contract. Indiana law provides that all contracts that IEDC enters are "subject to approval by the budget agency." Ind. Code § 5-28-5-3(b). In its Response, ER never addresses this statute. Mr. Paglia testified in his affidavit that the "State of Indiana Budget Agency had to approve a requisition." (Paglia Aff. ¶ 8.) Similarly, he testified in his deposition that a requisition "goes to the state budget agency for approval before it's created as a purchase order." (UMF ¶ 66.) Edward Roberts objects to the affidavit as allegedly based on hearsay, (Response UMF ¶ 19), but does not object to the deposition testimony or designate any contrary evidence. (*Id.* ¶ 66.) Mr. Paglia's statement that the State Budget Agency had to approve a contract is what Indiana law provides, Ind. Code § 5-28-5-3(b), and ER provides no explanation for why IEDC's Executive Vice President and COO would not have personal knowledge of this or why it is allegedly hearsay. Moreover, as detailed in the next, the Governor completely controls IEDC, and therefore, State exercises complete control over IEDC.The IEDC is immune from liability under the *Clissuras* factors.

4

### C. IEDC is an arm of the State under the *Mancuso* factors.

IEDC is immune under the *Mancuso* factors. In its Response, ER argues at length that the "**Indiana Attorney General ["IAG"] does not have control over IEDC**," and the IAG is not required to represent IEDC. (Response pp.12-16.) ER does not cite any authority that this is a relevant consideration under *Mancuso* or any Second Circuit case. Regardless, ER's focus on the IAG is misplaced. The Indiana Legislature has placed IEDC under the control of the Governor and executive branch, not the IAG. IEDC must obtain "approval by the budget agency" to enter into contracts, but "the corporation may enter into contracts ***without the approval of the attorney general***." Ind. Code § 5-28-5-3 (emphasis added). The Governor is the Chairman of IEDC's board, the Governor appoints all other members, and he can remove them at will. Ind. Code §§ 5-28-4-2(a), (c); 5-28-4-3(c); 5-28-4-4(a). The Governor and executive branch's control of IEDC is significant under *Mancuso*. 86 F.3d at 293 (providing that a factor is "how the governing members of the entity are appointed"). ER cites cases from other circuits to argue that this factor is not important, (Response pp.15-16), but the Second Circuit has held this factor is important. The Governor being on and controlling IEDC's board is a strong indication that the State intends IEDC to remain firmly under the State's control.

The Governor (who controls IEDC) acts independent of the IAG. IEDC can employ its own counsel, but only with "approval by the budge agency." Ind. Code § 5-28-5-3(a). The Governor can as well. Ind. Code § 4-3-1-2. In *Holcomb v. Bray*, 187 N.E.3d 1268, 1289 (Ind. 2022), the Indiana Supreme Court held that the IAG "cannot prevent the Governor from bringing a suit and hiring outside counsel to do so." *Id.* The Governor, and certain agencies he controls (such as IEDC), are independent of the IAG—a separate elected office. No one would contend that the Governor loses Eleventh Amendment immunity simply because he acts independent of a

5

separate elected office (IAG). *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996) (holding that "petitioner's suit against the Governor of Florida . . . is barred by the Eleventh Amendment"). The Governor and IEDC can retain their own counsel and sue and be sued, but this does not mean the Governor or IEDC lost Eleventh Amendment immunity.

ER argues that because IEDC is defined as an "independent instrumentality" that this supports IEDC is not an arm of the State. (Response p.12.) But the Indiana State Fair Commission is a "separate body, corporate and politic," and the Southern District of Indiana concluded it enjoyed Eleventh Amendment immunity." *Carter v. Indiana State Fair Comm'n*, No. 1:11-CV-00852-TWP, 2012 WL 5878035, at *6 (S.D. Ind. Nov. 20, 2012). In addition, the State Legislature knows how to disclaim sovereign immunity, and it has **not** done so with IEDC. For the Indiana Political Subdivision Risk Management Commission, the Legislature provides that it "is separate from the state in its corporate and sovereign capacity." Ind. Code § 27-1-29-5(a).

ER points to *Burrus v. State Lottery Commission of Indiana*, 546 F.3d 417 (7th Cir. 2008). (Response p.12.) But in that case, the lottery had no "fiscal reliance upon the state." *Id.* at 420. In contrast, ER does not designate evidence that IEDC is financially independent from the State, and IEDC receives millions of dollars of funding from the Legislature. (Brief p.12.)

The next factor is "how the entity is funded." *Mancuso*, 86 F.3d at 293. ER argues that IEDC can raise revenue from fees, but ER does not designate any evidence to support that fees could be used to pay a judgment. (Response p.16.) IEDC's COO has averred that any judgment would be paid from appropriated funds, and ER does not designate any contrary evidence. (Paglia Aff. ¶ 20.) Moreover, ER's own authority recognizes "[w]hat matters is the state's potential for *legal* liability," not whether payment would actually come from the State. *Ammend v. Bioport,*

*Inc.*, 322 F.Supp.2d 848, 857 (W.D. Mich. 2004). As previously detailed, the State is legally liable for any judgment in this case, and therefore, the receipt of any fees is irrelevant.

ER also ignores that by state law all IEDC funds (whether fees or appropriations) are maintained "within the state treasury." Ind. Code § 5-28-5-12(a). Robert Paglia testified that "[a]ll of IEDC's funds are maintained in the State of Indiana treasury." (Paglia Aff. ¶¶ 13, 22; UMF ¶¶ 19, 78.) ER objects that this is not a fact "but an unsupported conclusion." (Response UMF ¶ 78.) Where IEDC's money is maintained is a fact well within IEDC's COO's knowledge and is what Indiana law provides. Ind. Code § 5-28-5-12(a).

In this regard, ER ignores that the Southern District of New York has concluded that "that State Treasury money should be treated as State Treasury money for purposes of *Mancuso* analysis even if it is held and managed in a dedicated fund devoted to tort obligations, rather than as part of a general fund devoted to the payment of official salaries and like expenses." *See*, *Idaho Potato Comm'n v. M & M Produce Farms & Sales*, 95 F. Supp. 2d 150, 155 (S.D.N.Y. 2000). As a result, the fact that all of IEDC's funds, regardless of origin, are maintained within the State's treasury is significant for purposes of Eleventh Amendment immunity.

A factor is "whether the entity's function is traditionally one of local or state government." *Mancuso*, 86 F.3d at 293. While ER focuses on IEDC's independence in certain regards (Response pp.11-12), ER ignores that IEDC is "serv[ing] the interests of the state," Ind. Code § 5-28-1-1(b)(2), and as previously detailed, is completely controlled by the Governor. Another factor is "whether the state has a veto power over the entity's actions." *Mancuso*, 86 F.3d at 293. ER ignores this factor because the State Budget Agency has veto power over IEDC's contracts, Ind. Code § 5-28-5-3 (b), and the Governor controls IEDC and sits on its board. The *Mancuso* factors favor that IEDC enjoys Eleventh Amendment immunity.

7

**A. Edward Roberts' conversion claim fails as a matter of law.**

No designated evidence supports that IEDC committed conversion. In its Response, ER only cites *Johnson v. Johnson*, 849 P.2d 1361, 1362 (Alaska 1993), to support its conversion claim. There, local police seized drugs and money and transferred the money to the DEA. *Id.* The Alaska Supreme Court held: "By unilaterally transferring the property without any authority and in contravention of state statutes, the City committed conversion." *Id.* at 1365. Under Alaska law, "conversion is committed . . . by an unauthorized transfer or disposal of possession of the goods to one who is *not entitled* to them." *Id.*

The only evidence designated to this Court is that ER voluntarily had masks delivered to IEDC, and IEDC's only obligation was to inspect them. (UMF ¶¶26, 38-39.) IEDC inspected and rejected the masks. (*Id.* ¶¶ 41-46.) The federal government inspected and seized the masks under 19 U.S.C. 1526(e). (*Id.* ¶¶ 47, 58; Dweck Dep. Ex. 51.) *Johnson* does not help ER because ER has not designated any evidence or cited any authority that IEDC acted illegally. Indeed, Indiana law strongly favors reporting suspected illegal behavior to authorities. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009). ER has not designated any evidence or cited any authority that IEDC could somehow direct DHS to seize the masks or that it did so. ER has not shown in any way that the seizure was wrongful because ER has failed to obtain the return of the masks or even challenge it in court. (UMF ¶¶ 59-63.) DHS seizing the masks under the authority of federal law is not conversion by IEDC, and IEDC did not convert the masks by allowing DHS to inspect them. *See U.S. v. Check No. 25128 in Amount of $58,654.11*, 122 F.3d 1263, 1265 (9th Cir. 1997). ER has not designated any evidence to support that IEDC did anything tortious regarding DHS seizing the masks, and as the party with the burden of proof on this issue, this "lack of evidence" is fatal to ER's conversion claim. *Rose v. Breuer*, 2024 WL 1642818, *5 (April 16, 2024).

8

Moreover, as IEDC briefed, it is immune from liability under the ITCA. (Brief p.19-20.) ER's only response is that Indiana Code § 34-13-3-15 requires the IAG to defend the State in all tort suits. (Response p.22.) ER is wrong. The ITCA provides that the IAG will defend tort suits "***as required under IC 4-6-2***." Ind. Code § 34-13-3-15(4) (emphasis added). Indiana Code § 4-6-2-1(a) provides that IAG will defend suits against the State unless "otherwise provided for by law." As previously detailed, Indiana law expressly authorizes IEDC to retain its own counsel. Because IEDC's counsel is "otherwise provided for by law," IAG not representing IEDC is irrelevant.

Indiana Code § 5-28-5-7 provides that "[f]or purposes of IC 34-13-2, IC 34-13-3, and IC 34-13-4, the board and the employees of the corporation are public employees (as defined in IC 34-6-2-38)." ER ignores and does not dispute that under Indiana law because IEDC's employees and board are immune from liability, so is IEDC. *D.L. v. Huck*, 978 N.E.2d 429, 435 (Ind. Ct. App. 2012) (holding that because DCS "employees [] are given immunity, DCS as a whole effectively has immunity for those actions and omissions").

As detailed in the Brief (pp.21-22), IEDC enjoys immunity under the ITCA. ER claims IEDC is being held liable for conversion "for IEDC's own acts of seizing the masks." (Response p.22.) No designated evidence supports that IEDC seized the masks. The designated evidence is that ER had the masks delivered to Indiana, and DHS seized them. (UMF ¶¶ 39, 47.) ER has not designated any evidence to support that IEDC acted tortiously in any regard.

ER claims that "whether Bosso acted negligently, recklessly, or intentionally, when inspecting the masks would be an issue for the jury." (Response p.22.) Not so. Under the ITCA, "[w]hether an immunity applies is a matter of law for the courts to decide." *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1226 (Ind. 2009). As a result, this is not an issue for the jury, but is an issue for this Court. IEDC is immune from liability under the ITCA.

9

### B. Edward Roberts breach of contract claim fails as a matter of law.

In its Response (pp.23-24), ER initially argues that there is some dispute regarding the contract terms. Contrary to ER's argument, the operative terms of the email and both purchase orders are identical. (UMF ¶¶ 26, 30-31.) ER does not dispute that IEDC could refuse the masks for any reason because the parties' agreement was a sale on approval. (Response p.23.) ER does not designate any evidence to support that IEDC did not immediately refuse the masks. Bosso testified that this occurred, (UMF ¶ 42), and DHS seized the masks by October 14th. (*Id.* ¶¶ 47, 58.) There is no evidence to support that IEDC did not immediately reject the masks.

This leads to whether IEDC failed to "seasonably" notify ER of the rejection. Ind. Code §§ 26-1-1-204(3)-(4); 26-1-2-327(1)(b). ER does not dispute that "when only one inference may be drawn as to the reasonableness of the time in which defendant rejected the goods, it becomes a question of law." *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 28 A.D.3d 175, 178-79 (2006) (holding rejection timely as a matter of law, in part, because goods "were not perishable"). ER does not cite any facts or inferences to support that IEDC's notice of rejection was not seasonable given that the federal government seized the masks, instructed IEDC not to communicate with ER while it conducted an undercover investigation, and while IEDC obtained a letter from the manufacturer regarding whether it had sold masks to ER. (Brief pp.24-25.) It is undisputed that ER has never obtained the masks back from the federal government. (UMF ¶¶ 58-62.) There are simply no facts or reasonable inferences from those facts that would support that IEDC's notification of rejection was unseasonable or that the timing of the notice made any difference at all, given that the federal government seized the masks and never returned them.

For the foregoing reasons, this Court should grant the IEDC's summary judgment motion.

Respectfully submitted,

*/s/ Bradley M. Dick*
Bryan H. Babb, Atty. No. 21535-49
Bradley M. Dick, Atty. No. 29647-49
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
317-684-5000 (phone)
317-684-5173 (fax)
bbabb@boselaw.com
bdick@boselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024 a copy of the foregoing was electronically filed using this Court's e-filing system.

Joseph R. Corozzo, Jr.
Rubinstein & Corozzo LLP
260 Madison Avenue
22nd Floor
New York, NY  10016
jcorozzo@rubcorlaw.com

Marshall Mintz
Mintz & Oppenheim LLP
260 Madison Avenue
18th Floor
New York, NY  10016
mmintz@minopp.com

s/*Bradley M. Dick*

4827432.1