UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EDWARD ROBERTS, LLC, d/b/a ERlifescience,

Plaintiff,

- against -

INDIANA ECONOMIC DEVELOPMENT CORP.,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-0985 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

On September 29, 2025, the Court issued a Memorandum & Order granting Defendant's motion for summary judgment and dismissing both of Plaintiff's claims. (Mem. & Order ("SJ M&O"), Dkt. 75.)[1] On October 13, 2025, Plaintiff filed a motion for reconsideration under Local Civil Rule ("Local Rule") 6.3. (Recons. Mot., Dkt. 76; Recons. Mem., Dkt. 76-1.) On October 27, 2025, Plaintiff filed another motion for reconsideration that is virtually identical but requests relief under Federal Rules of Civil Procedure ("Rules") 59(e) and 60(b). (Second Recons. Mot., Dkt. 79; Second Recons. Mem., Dkt. 79-1.) For the following reasons, the Court denies Plaintiff's motions for reconsideration.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's prior orders. *See Edward Roberts, LLC v. Indiana Econ. Dev. Corp.*, No. 22-CV-985 (PKC) (RLM), 2022 WL 17492467 (E.D.N.Y. Nov. 21, 2022)

---

[1] The summary judgment Memorandum & Order is reported at *Edward Roberts, LLC v. Indiana Economic Development Corp.*, 810 F. Supp. 3d 356 (E.D.N.Y. 2025).

(denying Defendant's motion to dismiss); *Edward Roberts, LLC v. Indiana Econ. Dev. Corp.*, 810 F. Supp. 3d 356 (E.D.N.Y. 2025) (granting in part Defendant's motion for summary judgment).

Plaintiff brought two claims in this action: one for breach of contract and one for conversion. (*See* Compl., Dkt. 1, ¶¶ 37–46.) The Court dismissed both claims on summary judgment. (*See generally* SJ M&O, Dkt. 75.) Plaintiff asks the Court to reconsider only the dismissal of the breach of contract claim. (*See generally* Recons. Mems., Dkts. 76-1 & 79-1.) The Court therefore discusses only that claim.

Plaintiff's breach of contract claim alleged that the parties had a contract for Plaintiff to sell Defendant one million N-95 masks, that Plaintiff delivered the masks as promised, that Defendant accepted the masks, and that Defendant breached the contract by failing to pay Plaintiff the agreed-upon sum. (*See* Compl., Dkt. 1, ¶¶ 37–42.) The Court held that Defendant did not accept the masks but rather timely rejected them. (*See* SJ M&O, Dkt. 75, at 15–18.) The Court therefore concluded that Defendant did not breach the contract and that Plaintiff could not succeed on its breach of contract claim. (*Id.* at 18.)

**LEGAL STANDARD FOR RECONSIDERATION**

As an initial matter, there is no final judgment in this case. While the Court dismissed all of Plaintiff's claims on summary judgment, Defendant's counterclaims remain. (*See id.* at 18 (explaining that neither party moved for summary judgment on Defendant's counterclaims)); *see also* Fed. R. Civ. P. 54(b) (providing that, unless the court specifies otherwise, an order that adjudicates "fewer than all of the claims" in a case, including counterclaims, does not result in the entry of judgment). The Court therefore denies Plaintiff's motion under Rules 59(e) and 60(b) as premature. *See* 11 *Wright & Miller's Federal Practice and Procedure* § 2817 (3d ed. Apr. 2026) ("[A] Rule 59(e) motion is . . . considered untimely if it is made before the entry of judgment."); *Harris v. Millington*, 613 F. App'x 56, 58 (2d Cir. 2015) (summary order) (finding Rule 60(b)

inapplicable where district court's summary judgment order "was not final" because of a pending counterclaim and because no final judgment had been entered under Rule 54(b), and construing defendant's motion as one for reconsideration under Local Rule 6.3 instead).

Local Rule 6.3 is the proper vehicle for Plaintiff's motion. That rule allows a party to bring to the Court's attention "matters or controlling decisions which the moving party believes the [C]ourt has overlooked." Loc. Civ. R. 6.3.[2] "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); *accord Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citing *Shrader*, 70 F.3d at 257). Reconsideration is typically reserved for when there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).[3]

Importantly, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

---

[2] Local Rule 6.3 requires a motion for reconsideration to be made within 14 days of the decision as to which reconsideration is sought. Loc. Civ. R. 6.3. Plaintiff filed its first motion for reconsideration, which invoked Local Rule 6.3, exactly 14 days after the Court's summary judgment decision. (*See* SJ M&O, Dkt. 75 (issued September 29, 2025); Recons. Mot., Dkt. 76 (filed October 13, 2025).) Plaintiff's motion is therefore timely.

[3] In the context of a motion for reconsideration, manifest injustice "is defined as 'an error committed by the trial court that is direct, obvious, and observable.'" *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2023 WL 3625784, at *1 (S.D.N.Y. May 24, 2023) (quoting *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013); *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-CV-2303 (PMH), 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023)).

second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (internal quotation marks omitted) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). As such, a party may not advance new facts or arguments on a motion for reconsideration that it could have raised before. *See Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001).

## DISCUSSION

Plaintiff challenges the Court's summary judgment decision on four grounds. First, it argues that the Court interpreted the contract incorrectly. (*See* Recons. Mem., Dkt. 76-1, at 5–7.) Second, it argues that the Court erred by interpreting the contract "to operate in a manner not advanced by [Defendant]" on summary judgment. (*See id.* at 5.) Third, it argues that the Court incorrectly relied on several New York state court cases that it contends are factually distinguishable. (*See id.* at 7–8.) And fourth, it argues that "[t]he [C]ourt overlooked key facts in the record when holding that the rejection was timely as a matter of law." (*See id.* at 7.) None of these arguments merit reconsideration.

### I. Plaintiff's Motion Raises Improper Grounds for Reconsideration

Plaintiff's first argument, regarding how the contract should be interpreted, is improper because it merely rehashes an argument Plaintiff made at the summary judgment stage. (*Compare* Pl.'s Summ. J. Opp'n, Dkt. 72-1, at 24–25 (arguing that Defendant's right to reject the masks was time-limited by Clause 6 of the contract), *with* Recons. Mem., Dkt. 76-1, at 6–7 (making the same argument).) The Court already considered and rejected Plaintiff's argument. Plaintiff offers no new evidence or controlling decisions that would reasonably be expected to change the Court's conclusion. *See Shrader*, 70 F.3d at 257. The Court need not give Plaintiff a "second bite at the apple" by entertaining this argument as grounds for reconsideration. *See Analytical Survs.*, 684 F.3d at 52; *see also R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009) ("A party's fundamental disagreement with a court's legal analysis and conclusions as to a matter fully

considered does not serve as sufficient ground to warrant reconsideration of the court's decision." (citation omitted)).

Plaintiff's argument that the Court incorrectly relied on certain cases fails for similar reasons. Plaintiff does not contend that the Court *overlooked* these cases, and, more importantly, Plaintiff points to no controlling cases that would compel a different outcome. (*See generally* Recons. Mem., Dkt. 76-1, at 7–8 (arguing that the "facts in those cases [cited by the Court] are quite different from this [case]").) At most, Plaintiff's argument "amounts to a disagreement about the persuasiveness [of the cases cited], not a tenable argument that the Court overlooked controlling or persuasive authority." *See McFarlane v. Cmty. Health Ctr. of Richmond, Inc.*, No. 25-CV-0410 (NCM) (RML), 2026 WL 1045346, at *6 (E.D.N.Y. Apr. 17, 2026) (citation and internal quotation marks omitted). "In other words, [Plaintiff] simply disagrees with the Court's analysis, which is not a valid basis for reconsideration." *See id.* (citations and internal quotation marks omitted).

## II. The Court is Not Bound by Either Party's Interpretation of an Unambiguous Contract

Plaintiff's argument that the Court erred by interpreting the contract "to operate in a manner not advanced by [Defendant]" on summary judgment, (Recons. Mem., Dkt. 76-1, at 5), is legally incorrect. The Court is not bound by either party's interpretation of the contract in their summary judgment briefing. Because the Court found the contract terms to be unambiguous, (*see* SJ M&O, Dkt. 75, at 16), the Court properly gave effect to the plain meaning of those terms without considering extrinsic evidence. *See Greenfield v. Philles Records, Inc.*, 750 N.Y.S.2d 565, 569 (2002) ("[A] written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms. Extrinsic evidence of the parties' intent may

be considered only if the agreement is ambiguous . . . ." (citations omitted)); *accord Delshah 60 Ninth, LLC v. Free People of PA LLC*, 175 F.4th 192, 197 (2d Cir. 2026) (per curiam).

The parties' post-hoc interpretations of the contract at summary judgment are not even relevant to the Court's interpretation, let alone binding on the Court. *See* 11 *Williston on Contracts* § 30:6 (4th ed. May 2026) (explaining that, when interpreting an unambiguous contract, "it is not the parties' subjective intent but rather their objective intent, embodied in the language that they used to memorialize their agreement, that is relevant" (collecting cases)). In short, "[c]ontract interpretation is a matter for the Court; it does not turn upon the parties' post-hoc interpretations of contractual language." *AT&T Enters., LLC v. Atos IT Sols. & Servs., Inc.*, No. 23-CV-1395 (LJL), 2026 WL 1090227, at *15 (S.D.N.Y. Apr. 22, 2026).[4]

Plaintiff argues in the alternative that the fact that "the Court interpreted the contract in a way not pressed by [Defendant] . . . demonstrates an ambiguity in the language." (Recons. Mem., Dkt. 76-1, at 7.) That is also incorrect. Whether a contract is ambiguous is an issue of law for the Court to decide. *See Greenfield*, 750 N.Y.S.2d at 569. Again, the fact that the parties interpret the contract differently is neither binding nor relevant to the question of whether the contract language is ambiguous on its face. "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009)); *accord Kass v. Kass*, 673 N.Y.S.2d 350, 356 (1998). Thus, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC*

[4] Moreover, if the Court were to credit the parties' post-hoc arguments in their briefing as evidence of the meaning of the contract, it would credit the fact that Defendant's more recent briefing *does* interpret the contract the same way as the Court, effectively nullifying Plaintiff's argument. (*See generally* Def.'s Recons. Opp'n, Dkt. 78 (agreeing with the Court's interpretation).)

*Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). Plaintiff offers no controlling decisions or data that change the Court's conclusion that the contract was unambiguous, and reconsideration is therefore denied on this basis as well.

## III. Plaintiff's Contract Interpretation Argument Fails on the Merits

Although Plaintiff's rehashed argument that Defendant breached the contract is not a valid basis for reconsideration, the Court briefly addresses it to correct several mischaracterizations in Plaintiff's motion and explain why Plaintiff's argument lacks merit. *See Greene v. City of New York*, 773 F. Supp. 3d 94, 112 (S.D.N.Y. 2025) (explaining why defendants' arguments failed even though the court did not need to reach the merits); *RST (2005) Inc. v. Rsch. in Motion Ltd.*, 597 F. Supp. 2d 362, 366 (S.D.N.Y. 2009) (similar).

### A. Legal Standard for Breach of Contract and Acceptance of Goods

To prevail on a breach of contract claim under New York law,[5] the plaintiff must show "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Wiener v. AXA Eq. Life Ins. Co.*, 113 F.4th 201, 214 (2d Cir. 2024) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). Where the contract involves the sale of goods, Article 2 of New York's Uniform Commercial Code ("NYUCC") applies. *See Shaoxing Aceco Blanket Co., Ltd. v. Aceco, Inc.*, 670 F. App'x 8, 9 (2d Cir. 2016) (summary order) (citing *Integrated Circuits Unlimited v. E.F. Johnson Co.*, 875 F.2d 1040, 1041 (2d Cir. 1989)).

Under the NYUCC, a buyer must pay the contract rate for any goods they accept, even if those goods are non-conforming. *See* N.Y. U.C.C. § 2-607(1); *see also id.* § 2-602 cmt. 1 ("A

---

[5] The Court applied New York law to Plaintiff's breach of contract claim on summary judgment, (*see* SJ M&O, Dkt. 75, at 13 (choice of law analysis)), and Plaintiff does not take issue with that portion of the Court's decision, (*see generally* Recons. Mem., Dkt. 76-1 (also applying New York law)).

tender or delivery of goods made pursuant to a contract of sale, even though wholly non-conforming, requires affirmative action by the buyer to avoid acceptance."). To avoid accepting goods, the buyer must reject them "within a reasonable time after their delivery or tender"; the rejection is "ineffective unless the buyer seasonably notifies the seller." *Id.* § 2-602(1). "Seasonably" means "within the time agreed or, if no time is agreed, at or within a reasonable time." *Id.* § 1-205(b). What constitutes a reasonable time "depends on the nature, purpose, and circumstances of the action." *Id.* § 1-205(a). Generally, the buyer cannot be deemed to have accepted the goods until after they have had "a reasonable opportunity to inspect them." *Id.* § 2-606(1)(b).

Additionally, if a contract gives the buyer the express right to return the goods regardless of whether they technically conform to the contract, it can be considered a "sale on approval." *See id.* § 2-326(1)(a) (defining a "sale on approval" as existing when "delivered goods" are "delivered primarily for use" and "may be returned by the buyer even though they conform to the contract"). Consistent with the general principle described above, a buyer must "seasonably . . . notify the seller of [their] election to return the goods" in a sale on approval, or else they will be deemed to have accepted them. *See id.* § 2-327(1)(b). If the contract sets forth a specific time limit for the return, that time limit controls, as long as it is not manifestly unreasonable. *See id.* § 1-302(b) ("Whenever this act requires an action to be taken within a reasonable time, a time that is not manifestly unreasonable may be fixed by agreement."); *see also George v. Davoli*, 397 N.Y.S.2d 895, 897 (Geneva City Ct. 1977) (enforcing the time limit for a sale on return set forth in the parties' agreement even though the return would "ordinarily [have been] seasonable or within a reasonable time").

**B. The Court's Summary Judgment Decision**

Here, the contract between the parties reads as follows (reproduced verbatim from the contract):

1. 15 calendar days invoiced [sic] will be issued.
2. Respirators must pass Indiana fit test plus all federal standards as layer [sic] out by CDC/NIOSH/FDA and have all documentation that shows they are real.
3. If respirators do not pass inspection Indiana will not pay for the respirators.
4. Indiana has right [sic] to refuse respirators if they show up in unusable conditions.
5. ER Sciences acknowledges these respirators are NIOSH/CDC approved.
6. Indiana has right [sic] to refuse respirators for any reason up to the point invoice is issued.
7. If respirators do not pass fit test standards Indiana can seize the respirators and turn them over to proper authorities.

(*See* Pl.'s 56.1 Resp., Dkt. 72-2, ¶ 26; Recons. Mem., Dkt. 76-1, at 2.)[6]

The masks were delivered to Defendant in two shipments dated October 9, 2020, and October 14, 2020. (*See* SJ M&O, Dkt. 75, at 3–4.) Plaintiff sent Defendant three invoices with due dates of October 24 and 29, 2020. (*Id.* at 6.) On December 4, 2020, Defendant notified Plaintiff that it was rejecting the masks because it had determined that the masks were not authentic and did not meet Defendant's testing standards. (*See id.* at 6, 15; Bosso Dep. Ex. 87, Dkt. 69-8 (email notifying Plaintiff of Defendant's rejection).)

[6] At the summary judgment stage, Plaintiff claimed that there was a dispute over which of three written agreements was the operative contract. (*See* SJ M&O, Dkt. 75, at 13–14 (summarizing Plaintiff's argument).) The Court concluded that an email dated October 8, 2020 was the operative contract, and also that it was immaterial which written agreement governed because they all contained the same relevant terms and conditions. (*See id.* at 13–15.) Plaintiff does not ask the Court to reconsider that portion of the summary judgment decision and agrees that the contract contained the clauses quoted above. (*See* Recons. Mem., Dkt. 76-1, at 2.)

On summary judgment, Defendant argued that it did not breach the contract because it timely rejected the masks. (*See* Def.'s Mem. Supp. Summ. J., Dkt. 70, at 23–25.) It contended that the contract was for a sale on approval due to Clause 6 and that it could reject the masks "for any reason" under that clause. (*Id.*) It also cited Clause 3, though it did not further discuss that clause's effect. (*See id.* at 23.) In response, Plaintiff argued that Defendant's rejection was not timely because Clause 6 only permitted Defendant to reject the masks up until the invoice was issued, and Defendant rejected the masks after Plaintiff had already issued invoices. (*See* Pl.'s Summ. J. Opp'n, Dkt. 72-1, at 24–25.)

The Court agreed with Plaintiff that Defendant's rejection was not timely under Clause 6. (*See* SJ M&O, Dkt. 75, at 15.) However, the Court noted that several other clauses—including Clause 3—permitted Defendant to reject the masks and unambiguously contained no such temporal limitation. (*See id.* at 15–16.) The only limitation on when Defendant could reject the masks for not passing inspection under Clause 3 was that the rejection must have been "seasonable" under the NYUCC, meaning "within a reasonable time." (*See id.* at 16–18); *see also* N.Y. U.C.C. §§ 1-205(b), 2-602(1).

The Court found that Defendant's rejection was "reasonable" and "seasonable" as a matter of law under the circumstances of this case because "the federal government took control" over the masks, "instructed [Defendant] not to contact [Plaintiff] while the government's investigation was pending," and Defendant still provided Plaintiff with its notice of rejection less than two months after the masks were delivered. (*See* SJ M&O, Dkt. 75, at 17–18.) The Court granted summary judgment because it found that "the only reasonable inference that a jury could draw [from these facts] is that [Defendant's] rejection was timely." (*Id.* at 18 (first citing N.Y. U.C.C.

§ 1-205(a); and then citing *N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 809 N.Y.S.2d 70, 74 (1st Dep't 2006)).)

**C. The Court Further Elaborates on Its Rejection of Plaintiff's Interpretation of the Contract**

Plaintiff argues that "the temporal limitation in Clause 6 is a blanket provision" that constrained Defendant's ability to reject the masks under any clause of the contract. (Recons. Mem., Dkt. 76-1, at 6.) Although the Court has already rejected that interpretation, (*see* SJ M&O, Dkt. 75, at 15–16), and at risk of giving Plaintiff an unwarranted second bite at the apple, the Court nonetheless further elaborates on why Plaintiff's argument fails.

When interpreting a contract under New York law, the "fundamental objective . . . is to give effect to the expressed intentions of the parties." *Lockheed Martin*, 639 F.3d at 69 (quoting *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)). The threshold question is whether the contract is unambiguous on its face. *See id.* A contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Id.* (citing *White v. Cont'l Cas. Co.*, 848 N.Y.S.2d 603, 605 (2007)). If the contract is unambiguous, the Court must enforce it "according to the plain meaning of its terms." *Id.* (citing *S. Rd. Assocs., LLC v. IBM*, 793 N.Y.S.2d 835, 838 (2005)). And if the agreement as a whole "makes clear the parties' over-all intention," the Court must interpret isolated provisions of the contract in a way that "will carry out the plain purpose and object of the [agreement]." *Id.* (alteration in original) (quoting *Kass*, 673 N.Y.S.2d at 357).

Here, the language of Clause 6 is unambiguous. It says that "Indiana has right [sic] to refuse respirators for any reason up to the point invoice is issued." (*See* Recons. Mem., Dkt. 76-1, at 2 (reproduced as in original).) There is "no reasonable basis for a difference of opinion" about what that language means. *See Lockheed Martin*, 639 F.3d at 69 (citation omitted). This clause

clearly created a "sale on approval" arrangement, meaning that Defendant could reject the masks even if they fully conformed with the contract, as long as it did so within the time agreed. *See* N.Y. U.C.C. § 2-326 (defining a sale on approval as a transaction where "delivered goods may be returned by the buyer even though they conform to the contract"); (*see also* Pl.'s Summ. J. Opp'n, Dkt. 72-1, at 25 (not disputing that Clause 6 created a "sale on approval" contract)).

That is all Clause 6 does. It gives Defendant a time-limited right to reject the masks even if they conform. It does not limit or waive Defendant's other contractual rights, including the right to refuse masks that *do not conform* with the contract. *See* N.Y. U.C.C. § 2-326 cmt. 2 ("The right to return goods for *failure* to conform to the contract of sale . . . has nothing to do with this section or Section 2-327. . . . [which] deal[] instead with a power given by the contract to turn back the goods even though they are wholly as warranted." (emphasis added)). Defendant cannot be deemed to have waived the right to reject nonconforming masks absent a "clear manifestation of intent to relinquish [that] contractual protection." *See Kassab v. Kasab*, 151 N.Y.S.3d 94, 101 (2d Dep't 2021) (internal quotation marks omitted) (collecting cases); *see also, e.g.*, *Burt Millwork Corp. v. Irpinia Constr. Corp.*, 570 N.Y.S.2d 58, 60 (2d Dep't 1991) (holding that party had waived their ability to raise claims about defective merchandise due to contractual language stating clearly that "[a]ll claims by the purchaser shall be deemed waived unless made in writing within 10 days from the date of delivery and prior to use" (alteration in original)). Reading that sort of waiver into Clause 6, as Plaintiff urges, is simply not a reasonable interpretation.

The Court's interpretation of Clause 6 "carr[ies] out the plain purpose and object" of the contract as a whole. *See Lockheed Martin*, 639 F.3d at 69 (quoting *Kass*, 673 N.Y.S.2d at 357); *see also Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the

contract." (citing *Westmoreland Coal Co. v. Entech, Inc.*, 763 N.Y.S.2d 525, 528 (2003))). Looking at the contract holistically, it is clear that Defendant bargained to purchase the masks only if they met the contract's specifications. The contract expressly provides, in mandatory terms, that the masks "must pass Indiana['s] fit test plus all federal standards as [laid] out by CDC/NIOSH/FDA." (*See* Pl.'s 56.1 Resp., Dkt. 72-2, ¶ 26 (Clause 2).) It goes onto to specify that if the masks do not pass inspection, Defendant "will not pay for [them]," (*id.* (Clause 3)), and that if the masks do not pass the fit test standards, Defendant "can seize the respirators and turn them over to proper authorities," (*id.* (Clause 7)). These clauses—and, in fact, almost every clause of the contract—would be eviscerated if Defendant were deemed to have accepted the masks before having had a reasonable opportunity to inspect them. The Court's reading avoids that result and allows each clause in the contract to have its intended effect. *See Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 69 N.Y.S.3d 520, 525 (2017) (explaining that a contract "must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect'" (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 648 N.Y.S.2d 422, 424 (1996))); *see also Ronnen*, 648 N.Y.S.2d at 425 ("[A] contract which confers certain rights or benefits in one clause will not be construed in other provisions completely to undermine those rights or benefits." (citations omitted)).[7]

Because the contract is unambiguous and the "intent of the parties can be ascertained from the face of their agreement," the Court properly interpreted the contract as a matter of law on

[7] Plaintiff argues that this interpretation would allow Defendant to "rely on the condition the respirators were in when they first arrived to reject them in perpetuity." (*See* Recons. Mem., Dkt. 76-1, at 6.) That is wrong because, as Plaintiff admits, Defendant's timing would still be "constrained . . . by the reasonableness standard" under the NYUCC. (*See id.*) Put differently, Defendant could not have rejected the masks based on their initial condition in perpetuity; Defendant was still required to do so within a reasonable time, even though no specific time limit was set forth in the contract.

summary judgment. *See Postlewaite*, 411 F.3d at 67 (quoting *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 178 (1st Dep't 1995)). The Court concluded that no reasonable juror could find Defendant's actions, or the time it took Defendant to inspect the masks and notify Plaintiff of its rejection, unreasonable given the circumstances of this case and the relevant case law. (*See* SJ M&O, Dkt. 75, at 16–18.) Plaintiff has not raised any arguments that compel the Court to reconsider that conclusion.

Additionally, the Court holds that Defendant did not breach the contract for a second reason: because a condition precedent to Defendant's promise to pay did not occur. A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *MHR Cap. Partners LP v. Presstek, Inc.*, 884 N.Y.S.2d 211, 215 (2009) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 636 N.Y.S.2d 734, 737 (1995)); *see also* Restatement (Second) of Contracts § 224 (A.L.I. 1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."). The New York Court of Appeals has "recognized that the use of terms such as 'if' . . . constitutes 'unmistakable language of condition.'" *MHR Cap. Partners*, 884 N.Y.S.2d at 215 (quoting *Oppenheimer*, 636 N.Y.S.2d at 737). Here, Defendant's promise to pay was expressly conditioned on the masks passing Indiana's inspection. (*See* Pl.'s 56.1 Resp., Dkt. 72-2, ¶ 26 (Clause 3: "If respirators do not pass inspection Indiana will not pay for the respirators.").) The undisputed facts show that the masks did not pass that inspection. (*See, e.g.*, *id.* ¶ 42.)[8] Defendant therefore was under no

[8] To establish the undisputed fact that the masks did not pass inspection, Defendant cited to the deposition testimony of Luke Bosso, Defendant's chief of staff at the time. (*See* Pl.'s 56.1 Resp., Dkt. 72-2, ¶¶ 42, 1.) Bosso was asked at the deposition: "Did the masks that Edward Roberts sent to Indiana pass Indiana's inspection?" (*Id.* ¶ 42.) Bosso responded, "No." (*Id.*) Plaintiff claimed to dispute this fact, but its only response to Defendant's evidence was that

contractual obligation to pay for them, and Plaintiff's claim that Defendant breached the contract by not paying fails as a matter of law.

## IV. Plaintiff's Argument that the Court Overlooked Key Facts in the Record Does Not Merit Reconsideration

Finally, Plaintiff's argument that the Court "overlooked key facts in the record when holding that the rejection was timely as a matter of law," (Recons. Mem., Dkt. 76-1, at 7), does not warrant granting reconsideration. Plaintiff argues that the Court erred by considering the masks to be non-perishable goods because the undisputed evidence in the record shows that they had expiration dates. (*See id.* at 8–9.) The Court acknowledges that its description of the masks as non-perishable in its summary judgment decision was an oversimplification, since the masks did have expiration dates of between three and five years. (Pl.'s 56.1 Resp., Dkt. 72-2, ¶¶ 16, 46.) But it makes no practical difference whether the masks were non-perishable or whether they were perishable within three to five years because Defendant rejected the masks less than two months after they were delivered. The Court would still hold that "the only reasonable inference that a jury could draw" based on these facts "is that [Defendant's] rejection was timely." (SJ M&O, Dkt. 75, at 18.)

Plaintiff also argues that the Court erred by considering the fact that the federal government instructed Defendant not to communicate with Plaintiff about the masks because, Plaintiff contends, Defendant had constructively accepted the masks by the time the government told Defendant not to communicate with Plaintiff, making the government's instruction, in effect,

---

"Defendant does not cite to admissible evidence because of the repeated references to 'we' [sic] did and knew." (*Id.*) This unintelligible comment, however, does not create a factual dispute about whether the masks passed inspection. Thus, because Plaintiff cites to no admissible evidence showing that the masks did, in fact, pass Indiana's inspection, (*see generally id.*), it is undisputed that the masks did not pass inspection. *See* Loc. Civ. R. 56.1(b)–(c).

irrelevant. (*See* Recons. Mem., Dkt. 76-1, at 8–9.) However, as discussed above, the Court holds that Defendant did not accept the masks at any point. This argument is therefore moot.

Plaintiff identifies no other facts that the Court allegedly overlooked. Therefore, reconsideration is denied on this basis as well.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motions for reconsideration are DENIED. The Court directs Defendant to file a letter informing the Court how it intends to proceed with its counterclaims by October 30, 2026.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2026
Brooklyn, New York